Rel: August 22, 2025

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is published in **Southern Reporter**.

# ALABAMA COURT OF CIVIL APPEALS

## SPECIAL TERM, 2025

_____

## CL-2025-0077

_____

## Hunter Bend Homeowners Association, Inc.

### v.

## Victoria Grimes

## Appeal from Randolph Circuit Court
## (CV-22-900007)

MOORE, Presiding Judge.

Hunter Bend Homeowners Association, Inc. ("the Association"), appeals from a judgment entered by the Randolph Circuit Court ("the circuit court") in favor of Victoria Grimes. We reverse the circuit court's judgment and remand the case for the circuit court to hold a hearing on

the postjudgment motion filed by the Association and to undertake such other proceedings as are consistent with this opinion.

Background

In 2000, the Association was incorporated to govern the maintenance, preservation, and architectural control of the 246 lots and the common areas within the Hunter Bend Subdivision ("the subdivision"), a 210-acre parcel of residential property in Randolph County that is subject to the "Declaration of Covenants, Conditions, and Restrictions for the Hunter Bend Subdivision" ("the restrictive covenants"). The restrictive covenants provide that each owner of a lot within the subdivision shall become a member of the Association by recording a deed or other instrument of conveyance for the lot and delivering a copy of the deed or other instrument to the Association. According to the articles of incorporation of the Association, "each Lot owner shall be entitled to one vote for each lot owned (with fractional vote for a fractional Lot owned)" (emphasis added) and "[t]he voting rights of the members of the Association shall be subject to the terms and conditions of the Bylaws of the Association once prepared, executed, and recorded." The restrictive covenants contain similar language and also

include a clause providing that, in the event of a conflict between the bylaws and the restrictive covenants, the restrictive covenants control.

In 2000, the Association prepared and executed bylaws ("the 2000 bylaws"), but the Association did not record those bylaws in the Randolph Probate Court. The 2000 bylaws address the voting rights of the members of the Association, in pertinent part, as follows:

"C. Voting Rights. The Members of the Association shall be entitled to cast one vote for each Hunter Bend Lot owned by them. ...

"D. Designation of Voting Representative. If a Hunter Bend lot is owned by one person, his right to vote shall be established by the record title to his Hunter Bend Lot. If a Hunter Bend Lot is owned by more than one person, the person entitled to cast the vote for the Hunter Bend Lot shall be designated by a certificate signed by all of the record owners of the Hunter Bend Lot and filed with the Secretary-Treasurer of the Association. If a Hunter Bend Lot is owned by a corporation, professional association or partnership, the person entitled to cast the vote for the Hunter Bend Lot shall be designated by a certificate of appointment filed with the Secretary-Treasurer of the Association."

Both the restrictive covenants and the 2000 bylaws provide that they can be amended by "an instrument signed by not less than seventy percent (70%) of the Hunter Bend Lot Owners." In 2017 and 2019, the Association purported to amend the 2000 bylaws. The 2019 amendment purported to delete Section D of the 2000 bylaws relating to the

3

designation of a voting representative. In 2021, the Association purportedly voted to amend the restrictive covenants to reduce the number of votes necessary to adopt an amendment of the restrictive covenants. In early 2022, the officers of the Association sent ballots to the members so that they could vote on a proposed amendment to the restrictive covenants relating to the use of "trailers" on the lots in the subdivision.

On February 8, 2022, Grimes, who had purchased three adjoining lots in the subdivision in 2020, commenced a declaratory-judgment action in the circuit court. In her complaint, Grimes alleged that over half of the lots in the subdivision were owned by multiple persons, each with a right to a fractional vote. Grimes alleged that the Association had disregarded the voting rights of fractional owners as set forth in the articles of incorporation of the Association and in the restrictive covenants when it purported to adopt the 2021 amendment to the restrictive covenants. According to the complaint, "[w]hen votes were received from one member of a household where a lot was owned jointly between two or more people that vote of the one member of the household was counted as a whole vote when in fact it should have been counted as

a fractional vote." Grimes contended that, if the votes had been properly tabulated, the 2021 amendment to the restrictive covenants would not have been adopted. Grimes further asserted that the Association should not be allowed to follow the same voting procedures regarding fractional lot owners relating to the proposed 2022 amendment of the restrictive covenants. Grimes requested that the circuit court enter a judgment declaring that each owner or fractional owner of a lot is entitled to a vote proportionate to their ownership share and that the 2021 attempt to amend the restrictive covenants was of no force and effect.

The Association filed an answer denying the material allegations of the complaint and asserting various affirmative defenses, including lack of standing, unclean hands, and estoppel. After multiple continuances, the case was scheduled for trial on March 19, 2024. While the case was pending, in 2022, the Association purported to amend the restrictive covenants regarding the use of trailers. By March 11, 2024, the parties had each filed witness lists and exhibit lists indicating that they intended to call numerous witnesses and to submit numerous documents into evidence at the trial.

When the case was called for trial, the parties stipulated to the admission into evidence of the Association's articles of incorporation, the 2000 bylaws (as purportedly amended), and the restrictive covenants. Grimes's attorney, the Association's attorney, and the circuit-court judge then engaged in a long colloquy. The circuit-court judge reviewed Section D of the 2000 bylaws and asked if any certificates designating the voting representatives had been filed. The Association's attorney responded that "zero" certificates had been filed, explaining that the Association had never created a certificate form and that the Association had determined who could vote for a lot by establishing a master list based on the deeds and other instruments of conveyance relating to the lots. The circuit-court judge summarily determined that, due to noncompliance with Section D, the votes on the 2017, 2019, 2021, and 2022 amendments were not valid.

Based on that determination, the circuit-court judge declared that there was no need to receive any testimony. The hearing recessed while the Association's attorney conferred with the officers of the Association who were present at the time. When the recess ended, the circuit-court judge clarified that he had determined that the Association could not

6

have received the number of votes necessary to adopt any amendment to the restrictive covenants and the 2000 bylaws, because, he said, the owners of the lots owned by two or more persons or a legal entity had not filed the appropriate certificates to designate a person to vote. The Association's attorney responded: "All right. We accept your ruling, and we'll proceed accordingly."

On April 1, 2024, before the circuit court had entered a judgment, the Association filed a "motion to submit additional evidence and legal authority," arguing primarily that it had not been properly notified of any claim that the amendments were invalid due to noncompliance with Section D and that it should be allowed to present evidence to defend that claim in a full trial. Grimes filed a response to the motion, and she also submitted a proposed judgment for the circuit-court judge to sign. The Association replied to the response. On October 18, 2024, the circuit court entered a final judgment, adopting the proposed judgment filed by Grimes, which states, in pertinent part:

> "5. ... No one had been designated to be the sole person to cast the vote for all owners of a lot in any of the four attempts to amend the By-Laws and [restrictive covenants] at issue in this case.

7

"6. The Court finds that since the voting methods set out by the [restrictive covenants] and By-Laws have not been complied with in any of the four elections to amend the [restrictive covenants] or By-Laws, all those votes cast by lots with multiple owners have not been cast in conformity with the requirements for a legitimate vote to be cast on issues relating to amending the [restrictive covenants] and By-Laws.

"7. The Court finds that the two (2) attempts to amend the By-Laws and the two (2) attempts to amend the [restrictive covenants] allegedly passed and recorded in the Probate Office of Randolph County as an Amendment to the [restrictive covenants] and By-Laws are of no force and effect. These votes are a nullity as concerns any Amendment of the [restrictive covenants] and By-Laws.

"8. The Court finds there has been no legitimate amendment of any of the [restrictive covenants] or By-Laws ... in the year 2017, 2019, 2021 or 2022.

"After hearing this Court's Findings of Fact, the [Association] herein conceded that the voting requirements of the [restrictive covenants] and By-Laws had not been complied with specifically concerning the four elections at issue. The [Association] announced in open court that the Court could enter its Final Order on the issues before the Court.

"In consideration of the Court's Findings of Fact and the [Association's] conceding that it did not wish to continue with the trial based on the Court's Findings of Fact and Rulings as stated herein all the parties agreed that the Court could enter a Final Judgment in accordance with the Court's Findings of Fact. The Court then instructed [Grimes] to file for the Court Record: (a) a copy of the [restrictive covenants]; and (b) a copy of the By-Laws of the Hunter Bend Homeowners Association.

"It is therefore ORDERED, ADJUDGED, and DECREED by the Court as follows:

"The purported Amendments of the By-Laws and [restrictive covenants] done in the years 2017, 2019, 2021 and 2022 are of no force and effect. These Amendment[s] were not passed as required by a vote of 70% of the membership of [the Association].

"All the instruments purportedly changing the [restrictive covenants] and By-Laws that have been recorded in the Office of the Judge of Probate of Randolph County are hereby declared to be null and void. A copy of this Order shall be recorded in the Probate Office to signify that such attempted amendments are null and void.

"This Court is not making a Finding of Fact that the [restrictive covenants] and By-Laws cannot be amended. If they are amended, they shall be done in strict compliance with the language of the [restrictive covenants] and By-Laws as concerns what is required to amend the same."

(Capitalization in original.)

On November 18, 2024, the Association, through new counsel, filed a timely postjudgment motion seeking to alter, amend, or vacate the judgment and, in the alternative, requesting a new trial. The Association asserted that its rights had been substantially prejudiced by the injection of new claims on the day of trial. The Association also argued that the judgment had been erroneously based on statements of counsel and not on any admissible evidence, that Grimes could not sue the Association

9

for any votes occurring before 2020, that the circuit court had misinterpreted the documents controlling the voting procedures, and that the certification requirements of Section D did not apply, had been waived, or had been substantially performed. The Association maintained that the circuit court should conduct a new trial to consider the evidence relating to its defenses. At the conclusion of the postjudgment motion, the Association requested a hearing pursuant to Rule 59(g), Ala. R. Civ. P.

The record contains no evidence of any further proceedings in the case. On February 3, 2025, the Association filed a notice of appeal. At that time, the Association's postjudgment motion was still pending, so the notice of appeal was held in abeyance. See Rule 4(a)(5), Ala. R. App. P. On February 18, 2025, the postjudgment motion was denied by operation of law, see Rule 59.1, Ala. R. Civ. P., and the notice of appeal became effective pursuant to Rule 4(a)(5).[1]

---

[1]Rule 59.1, Ala. R. Civ. P., provides that a postjudgment motion that is not ruled on by the court within 90 days is deemed denied at the expiration of the 90-day period. The 90th day following the Association's filing of its postjudgment motion on November 18, 2024, was Sunday, February 16, 2025, and Monday, February 17, 2025, was a state holiday, see Rule 6, Ala. R. Civ. P. Therefore, the Association's postjudgment motion was deemed denied on Tuesday, February 18, 2025. See First

<u>Issues</u>

The Association maintains that the circuit court erred in denying its postjudgment motion without first conducting a hearing. The Association also argues that the circuit court should have granted its postjudgment motion to alter, amend, or vacate the judgment or, alternatively, for a new trial.

<u>Preservation of Right of Appeal</u>

Before considering the issues raised by the Association, we must address the findings in the circuit court's judgment that the Association "announced in open court that the Court could enter its Final Order on the issues before the Court" and that the Association "conced[ed] that it did not wish to continue with the trial." The record does not support those findings. The transcript of the trial proceedings reveals that, through its attorney, the Association stipulated that it had not received any voting certificates as required by Section D of the 2000 bylaws. Based in part on that stipulation, and on its review of the 2000 bylaws,

---

<u>Alabama State Bank v. McGowan</u>, 758 So. 2d 1116 (Ala. Civ. App. 2000), and <u>Richburg v. Cromwell</u>, 428 So. 2d 621 (Ala. 1983); <u>see also</u> <u>Williamson v. Fourth Ave. Supermarket, Inc.</u>, 12 So. 3d 1200, 1203-04 (Ala. 2009).

11

the circuit court determined that Grimes was entitled to a judgment as a matter of law, which, in the view of the circuit court, obviated the need for further testimony. After the circuit court clarified the terms of its decision, the Association's attorney "accept[ed] [the] ruling" made by the circuit court with the caveat that the Association would "proceed accordingly." At no point did the Association concede to the discontinuation of the trial or announce in open court that the circuit court could enter a final judgment granting Grimes the relief that she was requesting. We recognize that a party cannot appeal from a judgment or order to which it has consented. City of Bessemer v. Brantley, 258 Ala. 675, 682, 65 So. 2d 160, 166 (1953). However, an attorney does not consent to the entry of a judgment adverse to his or her client by merely acknowledging the decision of the trial court, see New Orleans & Ne. R.R. v. Lewis, 4 Pelt. 562, 565 (La. Ct. App. 1921), or by agreeing that the terms of the judgment accurately reflect the decision of the trial court. See In re Cauley, 437 S.W.3d 650 (Tex. App. 2014); Elliott v. Elliott, 97 N.J. Super. 10, 12, 234 A.2d 101, 102 (Ch. Div. 1967); Moore v. Crandall, 146 Iowa 25, 124 N.W. 812 (1910).

In her brief, Grimes contends that, by accepting the circuit court's ruling in open court, the Association had settled the case. Section 34-3-21, Ala. Code 1975, provides: "An attorney has authority to bind his ... client, in any action or proceeding, by any agreement in relation to such case, made in writing, or by an entry to be made on the minutes of the court." In Ex parte Sims, 627 So. 2d 380, 382 (Ala. 1993), the supreme court held that § 34-3-21 governs the settlement of cases at the trial-court level. In this case, however, there was no agreement between the attorneys or the parties to resolve the litigation that could be enforced under § 34-3-21. The record contains no mention of any settlement agreement between the parties. See BFI Waste Servs., L.L.C. v. Circle J Roll-Offs, Inc., 934 So. 2d 1058, 1061 (Ala. Civ. App. 2005) (holding that, in the absence of a written agreement or an agreement made in open court, § 34-3-21 did not apply). The transcript shows only that the circuit court summarily decided the merits of the case and that the Association's attorney subsequently acknowledged the decision. When a judgment incorporates the settlement agreement of the parties, it may be considered a consent decree, see Phoenix E. Ass'n v. Perdido Dunes Tower, LLC, 295 So. 3d 1016, 1027 (Ala. 2019) (explaining the nature of

13

a consent decree), which generally may not be appealed, see McGriff v. McGriff, 535 So. 2d 187, 187 (Ala. Civ. App. 1988), but, because there was no settlement agreement, the judgment in this case cannot be construed as a consent decree.

A party may lose the right to appeal by recognizing the validity of a judgment and acquiescing to its terms. See In re M.H., 252 Md. App. 29, 46, 256 A.3d 365, 375 (2021). However,

> "'[a]cquiescence in [a] judgment is never presumed and must be established by evidence that leaves no doubt of the required intent.' Vincent v. State Farm Mut. Auto. Ins. Co., 95-1538, p. 3 (La. App. 3 Cir. 4/3/96), 671 So. 2d 1127, 1129. '"Furthermore, appeals are favored in the law, and forfeiture of a party's right to appeal through acquiesce[nce] should be decreed only when the party's intention to acquiesce and to abandon his right of appeal is clearly demonstrated."' Thibodeaux v. Evangeline Parish Sch. Bd., 08-1065, p. 1 (La. App. 3 Cir. 10/15/08), 995 So. 2d 1252, 1253 (alteration in original) (quoting Hoyt v. State Farm Mut. Auto. Ins. Co., 413 So. 2d 1003, 1005 (La. App. 3 Cir.), writ denied, 423 So. 2d 1180 (La. 1982))."

Guidry v. Beauregard Elec. Coop., Inc., 164 So. 3d 266, 276 (La. Ct. App. 2015). In this case, after announcing that the Association would accept the ruling, the Association's attorney indicated that the Association would "proceed accordingly." Thereafter, the Association lodged multiple challenges to the decision, first by filing a motion before the judgment

14

was entered, second by filing a postjudgment motion after entry of the judgment, and third by filing this appeal. In these challenges, the Association has consistently argued that Grimes is not entitled to a judgment declaring that the amendments to the restrictive covenants and the 2000 bylaws are void based on its noncompliance with Section D. The record shows that the Association did not acquiesce in the judgment. Therefore, we conclude that the Association has preserved its right to appeal.

The Merits

Rule 59(g), Ala. R. Civ. P., provides:

> "Presentation of any post-trial motion to a judge is not required in order to perfect its making, nor is it required that an order continuing any such motions to a date certain be entered. All such motions remain pending until ruled upon by the court (subject to the provisions of Rule 59.1[, Ala. R. Civ. P.]), but shall not be ruled upon until the parties have had opportunity to be heard thereon."

(Emphasis added.) Pursuant to Rule 59(g), a party who has requested a hearing on a postjudgment motion has a right to a hearing before it is adjudicated. See Flagstar Enters., Inc. v. Foster, 779 So. 2d 1220, 1221 (Ala. 2000). A trial court errs when it allows a postjudgment motion to be denied by operation of law under Rule 59.1 without conducting a

15

requested hearing on the motion. Palmer v. Hall, 680 So. 2d 307, 308 (Ala. Civ. App. 1996). That error is reversible if the postjudgment motion has probable merit. See S.L. v. J.L.C., 282 So. 3d 26, 35 (Ala. Civ. App. 2019).

In this case, the Association moved the circuit court to alter, amend, or vacate the final judgment or, alternatively, to order a new trial. As the first ground for the requested relief, the Association argued that it had no notice of the claim upon which the judgment was entered. The Association pointed out that, in her complaint, Grimes did not seek a judgment declaring that the 2017, 2019, 2021, and 2022 amendments to the restrictive covenants and the 2000 bylaws were invalid due to a violation of Section D of the 2000 bylaws or the failure of the Association to obtain the certificates described therein. The Association also asserted that it otherwise had no notice of the claim until the trial, when the circuit court raised the issue on its own.

After reading the complaint, we agree that Grimes did not make any claim that the amendments were invalid due to the certification requirement set out in Section D of the 2000 bylaws. Grimes claimed only that the 2021 amendment and, potentially, the 2022 amendment

16

were invalid because the Association had not complied with the fractional-voting rules set forth in the restrictive covenants and the articles of incorporation of the Association. Grimes never attempted to amend her complaint. On July 20, 2022, the Association deposed Grimes, and, when asked if she had any basis for claiming that the amendments were invalid other than the alleged failure of the Association to properly count the votes of fractional lot owners, Grimes did not mention any alleged violations of Section D of the 2000 bylaws. The record contains no indication that Grimes was seeking declaratory relief on that basis before the trial date. Grimes claimed that the Association had learned of the full extent of her claims through discovery and discussions between her attorney and the Association's attorney, but Grimes did not allege that she had notified the Association that she was claiming that the amendments were void due to noncompliance with Section D of the 2000 bylaws. Grimes also did not present any affidavit or other admissible evidence to that effect.

In <u>Penney v. Carden</u>, 356 So. 2d 1188 (Ala. 1978), two landowners disputed the ownership of a 20-acre tract of land. The supreme court affirmed a judgment determining that the Cardens had adversely

17

possessed the land. Penney claimed that he was still entitled to compensation for valuable improvements he had made to the land. Penney admitted that he had not specifically pleaded a compensation claim for the improvements, but he argued that compensation could be awarded under his prayer for general relief. The supreme court reversed the judgment and remanded the case for the trial court to consider whether Penney was entitled to a judgment compensating him for the improvements and directed the trial court to consider whether the failure of Penney to plead the claim had substantially prejudiced the Cardens.

On remand, the trial court, without considering whether the Cardens had been substantially prejudiced by the assertion of the compensation claim for improvements during the trial, awarded Penney $3,300 in compensatory damages for the improvements. On appeal, this court reversed the judgment, concluding that the Cardens had been substantially prejudiced. See Carden v. Penney, 362 So. 2d 266, 268 (Ala. Civ. App. 1978). Rule 54(c), Ala. R. Civ. P., provides, in pertinent part: "Except as to a party against whom a judgment is entered by default, every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such

18

relief in the party's pleadings."  In <u>Carden</u>, this court said, in pertinent part:

> "Under the provisions of Rule 54(c) of the Alabama Rules of Civil Procedure it is the duty of the court to grant relief to which a party is entitled irrespective of the request for relief contained in the pleadings. ... However, Rule 54(c) does not sanction the granting of relief not requested in the pleadings where it appears that a party's failure to ask for particular relief has substantially prejudiced the opposing party. ... Moreover, if the relief granted pursuant to Rule 54(c) is not justified by the proof or is justified by proof which the opposing party has not had an opportunity to challenge, the relief granted should not be sustained on appeal. ... Accordingly, logic dictates that in those situations where an opposing party has no notice, by pleadings or otherwise, regarding the claim upon which relief is granted by means of Rule 54(c) and is thereby denied an opportunity to have challenged or defended against such a claim, the opposing party has suffered substantial prejudice and the judgment granting relief must be reversed."

362 So. 2d at 268-69.

In <u>Carden</u>, this court determined that the Cardens had not been given notice of the claim for the value of the improvements before trial and that the Cardens had not voluntarily litigated the claim, having objected to any consideration of the claim based on lack of notice.  This court held:  "The Cardens were substantially prejudiced because they did not receive sufficient notice that such an issue would be litigated thus

19

enabling them to challenge the amount and validity of Penney's claim." 362 So. 2d at 269.

In this case, the Association did not receive notice of the claim upon which the judgment was entered before trial. During opening statements, the circuit-court judge raised the claim on his own. At that time, the Association did not object to the claim being considered, but, based on the unusual nature in which the circuit court summarily adjudicated the case, a strong argument can be made that the claim was not voluntarily litigated so that the pleadings were amended to conform to the evidence under Rule 15(b), Ala. R. Civ. P. Before the final judgment was entered, the Association filed a motion objecting to a judgment being entered on that claim because it had not been pleaded, citing Carden. In its postjudgment motion, the Association renewed its objection by asserting that it had suffered substantial prejudice because it had been deprived of a fair opportunity to challenge or to defend the claim due to lack of notice in the pleadings or otherwise. The Association requested that the circuit court vacate the judgment and, at least, order a new trial at which it could defend against the new claim. It appears to this court that this argument has probable merit.

20

<u>Conclusion</u>

Having concluded that at least one of the issues presented in the Association's postjudgment motion is probably meritorious, we reverse the circuit court's judgment and remand the case for the circuit court to conduct a hearing on the entire postjudgment motion. <u>See</u> <u>Kent v. Herchenhan</u>, 215 So. 3d 1079, 1085 (Ala. Civ. App. 2016). On remand, the circuit court shall not be limited to the notice issue discussed herein; it may consider all the issues presented in the postjudgment motion in deciding whether to alter, amend, or vacate the final judgment or to order a new trial. The circuit court must allow Grimes an opportunity to respond to the Association's postjudgment motion and must allow the Association an opportunity to file a reply to the response. The circuit court may consider any evidence that the parties properly present in support of or in opposition to the postjudgment motion. Following the hearing and the entry of an order on the postjudgment motion, the circuit court may undertake such other proceedings as are consistent with this opinion.

REVERSED AND REMANDED WITH INSTRUCTIONS.

Edwards, Hanson, Fridy, and Bowden, JJ., concur.